509 A.2d 135

Larry Edward MILLER

v.

STATE of Maryland.

No. 840, Sept. Term, 1985.

Court of Special Appeals of Maryland.

May 22, 1986.

Bradford C. Peabody, Asst. Public Defender (Alan H. Murrell, Public Defender, on brief), Baltimore, for appellant.

Nicolette H. Prevost, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Baltimore, M. Kenneth Long, Jr., State's Atty. for Washington County and Laura K. Leizear, Deputy State's Atty. for Washington County, on brief), Hagerstown, for appellee.

Submitted before MOYLAN, GARRITY and WENNER, JJ.

GARRITY, Judge.

Larry Edward. Miller was convicted by a jury in the Circuit Court for Washington County of second degree rape, second degree sexual offense, perverted practice, assault with intent to rape, and battery. He was committed to the custody of the Division of Correction for five concurrent terms of six years. The appellant contends, in essence, that:

    I.  The court erred in excluding testimony that the prosecutrix had gonorrhea;

    II.  The evidence was insufficient to sustain the convictions; and

    III.  He was improperly sentenced after the judge questioned the victim about the impact of the offenses

and of her thoughts as to sentencing in the absence of appellant's presence.

## Facts

At about 8:30 p.m. on July 6, 1984, the prosecutrix completed her work as a waitress and went to a nearby tavern where she shot pool with a friend until he had to leave. She then sat at the bar and had a few beers and began "asking around" for a ride. The appellant, whom she had not previously known, offered to drive her home. They left the tavern at approximately 1:30 a.m.

During the ride, the appellant pulled over to the side of a rural road, grabbed the prosecutrix and forced her to commit fellatio. He then resumed driving but soon stopped again and began "wrestling" with the victim. Although the prosecutrix managed to run from the vehicle, the appellant caught the victim by her hair and threw her to the ground. When she began screaming, the appellant threatened to kill her with a knife. Miller then dragged the woman to the car, threw her inside, and had sexual intercourse with her.

Thereafter, the appellant apologized to his victim, and she persuaded him to take her to a convenience store where her girlfriend worked. Upon entering the store, she told her friend that she had been raped. She asked her friend to obtain the license number of the appellant's car and to call the police. The appellant quickly drove off. On his way home, however, Miller ran off the road and was injured. He was transported by ambulance to the same hospital where the prosecutrix was being examined in the emergency room. She immediately identified Miller as her assailant. Upon arrest, the appellant admitted only to consensual fellatio.

## I. *Excluded Testimony*

■ Miller contends that the trial court erred in excluding testimony that the prosecutrix had gonorrhea at the time of the alleged contact and that he did not have such venereal

disease on July 7, 1984. The judge ruled, based on insufficient nexus, that the evidence lacked probative value.

The appellant proffered testimony of a nurse who had twelve years' experience working in a clinic that treated persons with sexually-transmitted diseases. Out of the presence of the jury, the nurse advised the court that, according to the clinic's records, the prosecuting witness had been hospitalized on July 25 with a complaint of severe abdominal pain. She was then treated for gonorrhea and declared cured on August 8. Diagnostic tests run on the appellant on August 8, 1984, proved to be negative as to the presence of gonorrhea. While the nurse related to the court that she could not from her clinical experience estimate the percentage of cases in which a male would contract gonorrhea from an infected partner, she recalled that medical statistics indicated that less than 50% of males would have the disease passed to them during an engagement of sexual intercourse.

As expressed by Professor Wigmore in his treatise on evidence,

> The modern system of evidence rests upon two axioms.... The first is this: *None but facts having rational probative value are admissible....* [This axiom] prescribes merely that whatever is presented as evidence shall be presented on the hypothesis that it is calculated, according to the prevailing standards of reasoning, to effect rational persuasion. (Emphasis added).

Wigmore, Evidence § 9, pp. 655–64. (1983 ed.).

In *Allewalt v. State,* 61 Md.App. 503, 513, 487 A.2d 664 (1985), we said:

> A prerequisite to the admission of any evidence is that it be both relevant and material—it must tend to prove or disprove an issue that affects the outcome of the case.

We believe it clear that the proffered testimony of the nurse on *voir dire* totally failed to establish whether the prosecutrix had, or likely could have had, the disease at the time of the incident. We hold that the trial judge did not

err in ruling that the nurse's testimony lacked probative value as to the issue of whether the appellant had engaged in sexual intercourse with the prosecutrix.

## II. *Sufficiency of Evidence*

■ Miller argues that the evidence was insufficient to sustain his convictions. The State counters that he failed to preserve this issue for our review. We agree.

Maryland Rule 4–324(a) provides, in pertinent part:

A defendant may move for judgment of acquittal on one or more counts ... in a jury trial, at the close of all the evidence. The defendant shall state with particularity all reasons why the motion should be granted.

After presentation of the evidence by both parties, the appellant moved for a judgment of acquittal as to the "count of first degree rape." Appellant's counsel stated "as to the other counts ... I submit that these are properly to be presented before the jury."

Although the appellant contested the sufficiency of evidence as to first degree rape, he was not convicted of that offense. Since the trial court did not rule upon it, we shall not review the evidentiary sufficiency of the remaining charges. Md.Rule 1085.

## III. *Sentencing*

At the disposition hearing, the sentencing judge heard arguments from the prosecuting attorney and the appellant's counsel. The court also afforded the appellant his right of allocution. The following then occurred:

THE COURT: I'm going to do something a bit unusual in this case. I want to hear from the victim....

I would like to have counsel for the State and counsel for the defendant meet with me in my chambers with her and it will be recorded as a matter of record as I will take into consideration in my sentencing all that I heard about the case, the conviction, all that I've heard from counsel and from Mr. Miller today including what I hear from the victim. I'd like to do that. I know that there's a victim

impact statement that is part of any presentence investigation of the court. However that victim impact statement in this case is very slim and I would like to hear from her.

The prosecuting attorney, the defense counsel, and the victim then accompanied the judge into his chambers.

According to the record made of the proceedings, the victim claimed that Miller had harmed her psychologically, though not physically. The victim detailed the personal hardships she faced as a result of the incident, including loss of family support and having to suffer through invective taunts made by friends of the appellant as she continued her work as a waitress. The prosecutrix advised the judge that, while she wanted the appellant to receive psychological help, she believed a period of incarceration would be most appropriate.

The transcript of the disposition hearing then reflects:

(Whereupon, counsel and the victim returned to the court room and the following proceedings took place:)

THE COURT: Alright, Mr. Hannigan (Defendant's attorney), is there anything further that you would like to bring to my attention in mitigation?

MR. HANNIGAN: No thank you, your Honor.

THE COURT: On the charge of second degree rape it will be the judgment of this court that Larry Edward Miller be confined to the custody of the Commissioner of Correction for a period of six years....

It has long been recognized in this State that the procedure in the sentencing process is not the same as that in the trial process. As observed by the Court of Appeals in *Driver v. State*, 201 Md. 25, 32, 92 A.2d 570 (1952),

It is a fundamental principle that a person accused of crime shall not be convicted unless he is given reasonable notice of the charge and an opportunity to be heard in his defense and to examine adverse witnesses. But the sentencing judge may consider information, even though obtained outside the courtroom, from persons whom the

defendant has not been permitted to confront or cross-examine.

Writing on behalf of the Court in *Bartholomey v. State,* 267 Md. 175, 193, 297 A.2d 696 (1972), Chief Judge Murphy explained that:

[T]o aid the sentencing judge in fairly and intelligently exercising the discretion vested in him, the procedural policy of the State encourages him to consider information concerning the convicted person's reputation, past offenses, health, habits, mental and moral propensities, social background and any other matters that a judge ought to have before him in determining the sentence that should be imposed.

As stated by Judge Orth on behalf of the Court in *Lodowski v. State,* 302 Md. 691, 744, 490 A.2d 1228 (1985):

The short of it is that there is "a paucity of restraints being placed on a judge possessing the responsibility to impose punishment, lest he be 'found to bridle himself with mental blinders and thus enter the process of imposing sentence with impaired vision.' " *Logan v. State,* 289 Md. 460, 482, 425 A.2d 632 (1981) quoting *Johnson [v. State ],* 274 Md. [536] at 542, 336 A.2d 113 [1975]. To the multifarious information from multitudinous sources which the sentencing judge may consider, has been added, by express legislative dictate, evidence concerning the impact the crime had on the victim and his family.

It is evident that the "restraint" is most pronounced in the "sentencing process." In *Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), the United States Supreme Court reminded us that the sentencing process, as well as the trial itself, must satisfy the requirements of the Due Process Clause of the U.S. Constitution. *Gardner* held that using portions of a presentence investigation report without notice to the defendant and without affording him an opportunity to rebut or challenge the report denied due process.

In the case *sub judice*, a PSI had been prepared and made available to the appellant and defense counsel in accordance with Md. Code, art. 41, § 124(b) and Md. Rule 4–341. As observed in *Scott v. State,* 289 Md. 647, 426 A.2d 923 (1981), the obvious purpose of providing a presentence report to the defendant is to provide him, prior to the sentencing hearing, an opportunity to martial any evidence he may have to test the validity of the information contained in the report or to rebut any unfavorable inferences. The crux of the problem in the case at bar is that the trial judge, after the appellant's allocution, proceeded to gather additional information without disclosing to the appellant the new information he intended to rely on in setting sentence.

In *Lodowski v. State, supra,* the sentencing judge allowed oral testimony at the disposition hearing by the widow of the police officer and by the mother of the other victim who had been shot by Lodowski. The statements and testimony described in graphic detail the adverse impact of the murders on each family. The theory advanced by Lodowski on appeal was that, assuming the admissibility of the written impact statements, it was error to allow the additional live testimony of the victim survivors. In a scholarly explanation of the evidence admissible at a disposition hearing, Judge Orth stated:

> It is not a new and unusual concept that a sentencing judge may, in his discretion, entertain in open court evidence relevant to the imposition of sentence. This has long been established. Indeed, in the past, dispute over the receipt of such evidence did not focus on obtaining it in open court but rather on gathering it out of the courtroom from persons whom the defendant had not been permitted to confront or to cross-examine. The cases, however, which establish that the sentencing judge may consider information, even though it was obtained outside the courtroom without regard to the strict rules of evidence, indicate clearly that there was no impediment to obtaining it in open court through testimony. (Cita-

tions omitted). Thus, it is patent that over the years this Court has recognized and accepted without equivocation or question that a sentencing judge, in his discretion, may obtain information relevant to the imposition of sentence in open court through live testimony.

*Id.* 302 Md. at 748–9, 490 A.2d 1228.

Chief Judge Murphy, however, cautioned in *Bartholomey v. State,* 267 Md. at 193 n. 13, 297 A.2d 696, with supporting citations:

> Any information which might influence the judgment of the sentencing judge, not received from the defendant himself, or given in his presence, should (without necessarily disclosing its source) be called to the defendant's attention so as to afford him an opportunity to refute or discredit it.

Indeed, Md.Rule 4–342(d) mandates that "[b]efore imposing sentence, the court shall afford the defendant the opportunity, *personally and through counsel,* to make a statement and to present information in mitigation of punishment." (Emphasis added). The very purpose of affording an accused the right to allocute before passing sentence is to provide him or her an opportunity to refute or explain any information presented to the sentencing judge and to present a statement in mitigation of punishment. *Kent v. State,* 287 Md. 389, 412 A.2d 1236 (1980); *Brown v. State,* 11 Md.App. 27, 32, 272 A.2d 659 (1971).

■ The record is totally devoid of any indication that the appellant had been made aware by either his counsel or by the sentencing judge as to any statement made by the victim in the privacy of the court's chambers.[1] It is rather

---

1. This case is factually distinguishable from *Logan v. State,* 289 Md. 460, 425 A.2d 632 (1981). In that case after defense counsel had made an impassioned plea the trial judge inquired if the defendant cared to be heard from. Defense counsel, in the presence of his client, replied that the defendant did not. To this answer no objection or register of disagreement was made by the defendant. The Court ruled that the

apparent in the case *sub judice* that, without knowing what new information the sentencing judge was relying upon when considering sentence, the appellant could not have knowingly and intelligently waived his right to allocute, even if he had been asked. We believe it to be a matter of fundamental fairness that a sentencing judge, who intends to use as a factual basis for a sentence any information not disclosed or available to the defendant, must afford him or her an opportunity to refute or explain it. We shall remand the case for resentencing.

■ We are not to be understood as supporting the practice of trial judges' conducting private interviews with victims and then relating to the defendant what the victims said. Statements by a victim to a judge should ordinarily be made in the presence of the defendant.

CONVICTIONS AFFIRMED; SENTENCES VACATED AND CASE REMANDED FOR RESENTENCING IN ACCORDANCE WITH THIS OPINION. ONE-HALF OF COSTS TO BE PAID BY APPELLANT AND ONE-HALF OF COSTS TO BE PAID BY WASHINGTON COUNTY.

---

defendant had forfeited his right to appellate review of the allocution issue.