**STATE of Missouri, Respondent,**

v.

**Kevin C. ERVIN, Appellant.**

**No. WD 37151.**

Missouri Court of Appeals, Western District.

Nov. 4, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 23, 1986.

Application to Transfer Denied Feb. 17, 1987.

Charles E. Atwell, Kansas City, for appellant.

William L. Webster, Atty. Gen., Elizabeth A. Levin, Asst. Atty. Gen., Jefferson City, for respondent.

Before BERREY, P.J., and PRITCHARD and DIXON, JJ.

BERREY, Presiding Judge.

Appellant Kevin C. Ervin, defendant below, appeals his conviction for forcible rape.

The facts are these. On March 28, 1984, the fifteen (15) year old victim, A.P., overslept and missed her school bus. She lived at 47th and Prospect and had to get to her school on east 23rd street. She caught an ATA bus on Prospect and got off at 23rd

street. She walked west toward Lincoln Academy located at 2012 East 23rd Street, Kansas City, Jackson County, Missouri. She was accosted by defendant along the way. The defendant said "you dropped something by the pole" and when she looked around he said, "Don't you see it?" A.P. responded in the negative, at which point defendant grabbed her and put something in her back. He told her to not make a scene and he started pushing her. Though she never saw a knife, she testified defendant said he was going to cut her up if she said anything. He asked for her name and she gave him a fictitious one. He then went through her wallet and got her name and took two dimes from her. Throughout A.P. was begging defendant to release her. He next forced her into an alley, removed her cheerleader skirt, her panties and raped her. He picked up a board and hit her on the head and she became dizzy. He struck her on the face with his hand or fist. Officer Rose Mitchell of the Kansas City Missouri Police Department responded to the area by a call from the dispatcher reporting a disturbance at 23rd and Brooklyn involving a black male and white female. When the officer arrived she saw a black male and white female walking westbound on 23rd between Park and Brooklyn.

The couple was stopped and the officer asked where they were going and got no response. A.P. looked down and then at the black male. The officer then saw a red mark on A.P.'s face and A.P. looked upset as her eyes were watery "as if she were going to cry." Officer Oliver, backup for Officer Mitchell, took the negro male away and A.P. then told Mitchell what had happened. A.P. took the officer to the spot where she stated the rape occurred.

Willa Majors, a secretary at Lincoln Academy, testified she called the police in response to a citizen who came hurriedly into the office and reported that a black man and white girl were going down 23rd street; the black man had grabbed this girl's arm as they were moving down 23rd street. Majors was asked to call the police and she did.

I

The first point raised by defendant alleges the trial court erred in denying the introduction of evidence showing the victim had gonorrhea at the time of the alleged rape. This evidence, according to defendant, would tend to prove that he did not rape the victim because he did not contract the disease. He further contends he was unable to effectively cross-examine Dr. Mike Weaver, the examining physician at St. Luke's rape center, who testified to the victim's symptomologies of tenderness and inflamation of the vaginal area often associated with aggressive sexual behavior; defendant states he could produce evidence showing these symptoms could also be consistent with gonorrhea. Thus, he asserts the refusal of the evidence of the victim's gonorrhea amounts to a violation of his rights to compulsory process and to confront witnesses against him guaranteed by the United States and Missouri Constitutions.

A pretrial hearing was held concerning the admissibility of this evidence, and the judge denied defendant's motion to allow the admission of the evidence. Defendant sought a writ of prohibition but it was denied by this court. The trial judge adopted the earlier decision made at the suppression hearing and the case was heard without the admission of the evidence.

Defendant alleges the evidence is admissible pursuant to § 491.015, RSMo 1978, known as the Rape Shield Statute. The pertinent statutory provisions urged by defendant read as follows:

1. In prosecutions for the crime of rape, ... evidence of specific instances of the complaining witness' prior sexual conduct ... is inadmissible except where such specific instances are:

. . . .

(2) Evidence of specific instances of sexual activity showing alternate source or origin of semen, pregnancy or disease; and

. . . .

2. Evidence of the sexual conduct of the complaining witness offered under this section is admissible to the extent that the court finds the evidence relevant to a material fact or issue.

In the Supreme Court's most recent pronouncement concerning the construction of these statutory provisions, the court re-examined its prior decisions in *State v. Ray,* 637 S.W.2d 708, 709 (Mo. banc 1982) and *State v. Brown,* 636 S.W.2d 929, 933 (Mo. banc 1982), holding the statute creates only a "presumption" that evidence of a victim's prior sexual conduct is irrelevant, and found this was an erroneous statement of the law. *State v. Jones,* 716 S.W.2d 799 (Mo. banc 1986). The court stated that:

[S]ection 491.015 provides that evidence of specific instances of a victim's prior sexual conduct is inadmissible except as provided in (1), (2), (3) and (4). In our view, Subsection 2 is directed only at the exceptions set forth in (1), (2), (3) and (4). *Evidence offered under (1), (2), (3) and (4) is admissible only "to the extent that the court finds ... [it] relevant to a material fact or issue."* Insofar as they hold to the contrary, *Brown* and *Ray* should no longer be followed. If all "relevant" evidence were admissible, there would be no reason for (1), (2), (3) and (4).

(Emphasis added.) Thus, subsection 2 of paragraph 1 of the statute has no applicability to this case unless it is relevant to a material fact or issue.

In *State v. Terry,* 582 S.W.2d 337, 341 (Mo.App.1979) this court found the provision appropriate only when the victim claims the rapist gave her a certain disease; the subsection allows proof of alternative sources of the disease. The victim here made no allegations that she contracted the disease from the defendant.

 Like the defendant in *State v. Terry, supra,* 582 S.W.2d at 341, defendant

Ervin attempts to show the relevancy of this evidence by stating that his failure to contract this disease lends support to his claim of innocence; he asserts the defense that no intercourse took place. Unlike *Terry,* however, the defendant sub judice produced evidence that his test for gonorrhea taken six weeks after the rape occurred was negative. Whether this evidence is relevant within statutory provision is dependent upon whether its probative value outweighs its inflammatory and prejudicial nature; the decision of the trial court in answering this question will not be disturbed unless there is a abuse of discretion. *State v. Ray, supra,* 637 S.W.2d at 709.

Although relevant to a degree, its probative force does not transcend the "compounding of the unfortunate woman's humiliation." *Terry, supra,* 582 S.W.2d at 341. The evidence shows defendant was not tested for the disease until six weeks after the rape. There existed less than $33\frac{1}{3}\%$ chance defendant would contract the disease upon intercourse. Further, 25% of all gonorrhea cases are not reported to the state agencies lessening the impact of the evidence that his name [1] and the name of his girlfriend did not appear within the state records listing the reported cases of gonorrhea. This tenuous evidence does not reach a level of probative force to warrant the inflammatory and prejudicial impacts upon the victim and the proceeding by its admission.

Similarly, the cross-examination of the state's expert witness would not produce such probative evidence to justify the intrusion on the victim's privacy interest. By stipulation the parties agreed that Dr. Weaver would testify the tenderness of the vaginal area although consistent with P.I.D., a condition associated with gonorrhea, it was more consistent with rape in light of his discovery of motile sperm in her vaginal area and her panties as well as her

---

1. The name Kevin Ervin as well as Kevin Cole, a name sometimes used by defendant, did not

appear in the state reports.

statement made concerning the rape. Thus, we find § 491.015 has been constitutionally applied to the facts presented and that no abuse of trial court discretion exists.

## II

Defendant alleges the trial court erred in admitting the testimony of a woman who worked as a secretary at Lincoln Academy on the day of the rape as in conflict with the hearsay rule. She testified that an unidentified woman entered the school and:

A. She asked me if there—she said there was a black boy and white girl going down 23rd; and she asked me did I know the girl go to school? And I said no, I couldn't see her. The she asked me that—said that they were—that this black guy grabbed this girl's arm and they were going down 23rd Street.

Q. And did she ask you to call the police?

A. Yes.

Q. Did the—were the police called?

A. Yes.

■ This testimony was admissible as background information to explain the police officers subsequent conduct; *State v. Brooks*, 618 S.W.2d 22, 25 (Mo. banc 1981); it was not admitted for the truth of the matter asserted. The rationale of this rule is that the evidence is "more likely to serve the ends of justice in that the jury is not called upon to speculate in the cause or reasons for the officers subsequent activities." *Id.*

## III

Defendant argues the trial court erred in overruling his request for a mistrial because of the prosecutor's improper remarks made in reply in his closing argument:

Juries in this county are allowed to assess punishment. Why? To show how the community feels about this type of conduct. If you think that grabbing someone on the street, pushing them in an alleyway, a 15 year old girl and rape her, if you think that's the minimum sentence, then give it to him. If you think broad daylight rape is a five year sentence, then give him five years. You decide. But I don't know how worse you could get this crime than having him kill her. But you don't have him kill her. Why? Because she complies.

Defendant asserts the prosecutor is asking the jury to speculate that he is capable of another offenses i.e., murder. Defendant relies on a line of cases stating that a prosecutor may not argue for punishment to prevent defendant from committing future crimes. *State v. Crawford*, 539 S.W.2d 633, 637 (Mo.App.1976); *State v. Raspberry*, 452 S.W.2d 169, 172 (Mo.1970). These cases are distinguishable in that the prosecutor is not arguing that unless defendant is incarcerated for an appreciable amount of time, the potential exists that he will further commit unlawful acts. Rather, the prosecutor attempted to emphasize the depravity associated with the crime of rape. The question becomes whether the prosecutor, in his vigor, prejudiced the rights of the defendant by alluding to the possibility the victim could have been killed in the rape attack.

The trial court is given considerable latitude in control of closing arguments. The trial court will be reversed for abuse of its trial court discretion only when the argument is plainly unwarranted and has a prejudicial effect on the jury's determination. *State v. Hobby*, 706 S.W.2d 232, 234 (Mo. App.1986). "Granting a mistrial for improper argument is a harsh remedy to be exercised only when the overtones of prejudice can be removed by no other means." *State v. Johnson*, 697 S.W.2d 213, 214 (Mo. App.1985).

■ The prosecutor's remarks made in retaliation to defense counsel argument that the jury should consider mitigating factors when assessing punishment, may

be seen as a comment on the evidence. The victim testified defendant had threatened to cut her up and had stuck a sharp instrument in her back. Further, at the time of the attack, defendant was swinging a board at her in an effort to make her submit. Although the inference should not be lauded, we find the trial court did not abuse its trial court discretion. *See, State v. Hayes*, 624 S.W.2d 16, 20 (Mo.1981); *see also, State v. Rezabek*, 584 S.W.2d 430, 434 (Mo.App.1979).

## IV

Finally, defendant alleges the trial court erred in overruling his motion for judgment of acquittal after discharge of the jury, or in the alternative motion for a new trial, based on his claim of newly discovered evidence. Defendant asserts he discovered, subsequent to the verdict, John T. Wilson, the forensic chemist called by the state to testify, had initially excluded defendant as a depositor of the semen secretion found in the victim's underwear as being inconsistent with defendant's blood type.

On direct examination, Wilson's testimony concerning the blood typing of the seminal fluid found was as follows:

A. Yes. Actually its' more the seminal fluid which is the liquid medium that the sperm is in, it is what is actually typed.

Q. What did you type that to be?

A. The only blood group I could find was A.

Q. Now, what does that mean in relationship to the defendant's blood type of AB?

A. Well, normally most AB individuals will secrete the same amount of both A and B substance; but in the case of Mr. Ervin, he only—he secretes a great deal of A and very little B. So in this case I could not eliminate the defendant as being a possible contributor of the seminal stain that I analyzed.

On cross examination by defense counsel this colloquy appears:

Q. And then from that blood you did a test designed just to determine that he has AB blood?

A. Yes.

Q. And then you were able to determine that from the seminal stain, and by the way you were also able to determine that Mr. Ervin, like eight out of ten of all of us, is what we call a secretor?

A. Yes.

Q. Meaning that Mr. Ervin, if you had his saliva or his seminal stain, that would assist you in typing his blood; is that correct?

A. Yes.

Q. So once you had Mr. Ervin's blood, you were able to determine it was AB?

A. That's correct.

Q. You were able to determine A blood groups from the seminal stain; is that right?

A. Yes.

Q. So, in essence, Mr. Ervin's blood is consistent with the blood type that you found in the seminal stain?

A. No. At that time I would say Mr. Ervin absolutely was not consistent, just simply looking at his blood and saying he was secretor and saying that he was a group AB. If I had not gone any further, I would have told the prosecutor he could not have contributed that seminal stain.

Q. Well, then further tests determined that since he did not secrete much of the B substance that he could have secreted the seminal stain; is that right?

A. That's correct.

Q. In essence what you did is you eliminated Mr. Ervin, along with about 40 percent of the male population, could have put that seminal stain in those pants; is that right?

A. That's correct; yes.

In summary, this testimony reveals defendant possessed AB blood type; however, he secretes a great deal of A blood and very little B blood. The seminal stain on the victim's underwear was consistent with A blood group. Thus, Wilson concluded because of defendant's over abundance of A blood in relation to the B blood, defendant could not be eliminated as a secretor.

Defense counsel, in an affidavit attached to the motion for new trial, stated he further explored with Wilson the initial inconsistency in the blood typing. Wilson indicated to defense counsel that another chemist may have rendered a contrary opinion excluding defendant as a possible secretor. Defendant urges this evidence was material and would have likely caused the defendant to be acquitted.

■ Whether a new trial is warranted, based on newly discovered evidence, is dependent upon defendant proving: (1) that the evidence has come to the knowledge of the defendant since the trial; (2) that it was not owing to the want of due diligence that it was not discovered sooner; (3) that it would probably produce a different result on a new trial; and (4) that it is not cumulative only or merely impeaching the credit of the witness. *State v. Johns*, 679 S.W.2d 253, 266 (Mo. banc 1984). Whether the defendant's proof is sufficient is within the sound discretion of the trial court and its decision will be reversed only if that discretion is abused. *State v. Tyler*, 587 S.W.2d 918, 928 (Mo.App.1979).

■ We find no abuse of trial court discretion as the evidence was neither new, non-cumulative, nor of the genre which would likely produce a different result. The fact that Wilson had initially excluded defendant as a potential secretor was elicited by defense counsel on cross-examination *before the jury*. The jury was apprised that some question existed concerning defendant's blood typing. Any further clarification could have been made at that time or before the close of the evidence. It is

unlikely this evidence would have produced a different outcome of the case.

Judgment affirmed.

All concur.