**Robert L. FOX, Appellant,**

v.

**Todd Allen DANNENBERG, Appellee.**

**No. 89–2162WM.**

United States Court of Appeals,
Eighth Circuit.

Submitted April 11, 1990.

Decided June 28, 1990.

R.B. Miller, III, Kansas City, Mo., for appellant.

William S. Ohlemeyer, Kansas City, Mo., for appellee.

Before JOHN R. GIBSON, Circuit Judge, and FLOYD R. GIBSON and HENLEY, Senior Circuit Judges.

FLOYD R. GIBSON, Senior Circuit Judge.

Robert L. Fox brought this wrongful death action against Todd Allen Dannenberg, alleging that his son's death in a one-car accident was caused by Dannenberg's negligent driving. The jury rendered a defendant's verdict, and Fox now appeals the judgment on the verdict as well the district court's denial of his motion for a new trial. We hold that the district court committed reversible errors by excluding expert testimony and in instructing the jury. Therefore, we reverse and remand for a new trial.

## I. BACKGROUND

Derek Fox, the plaintiff's deceased son, and Todd Dannenberg were roommates at a junior college in Centerville, Iowa. Late on the night of September 22, 1986, they decided to drive to Kansas State University in Manhattan, Kansas, to see Derek's girlfriend. This was a trip of approximately 275 miles. They left Centerville in Derek's car and arrived in Manhattan in the early morning hours of September 23rd. Derek Fox drove the entire way from Centerville to Manhattan. They stayed only a few hours and left the Kansas State campus sometime between 10:00 and 11:00 a.m. to return to Centerville. Derek's girlfriend testified that Derek was driving the car when the boys left her dormitory. The boys stopped and ate at a fast-food restaurant before leaving Manhattan. Dannenberg testified that he fell asleep in the passenger seat soon after they left Manhattan and that he has no memory of anything that happened from that time until after the accident.

The accident occurred at approximately 2:00 p.m. near the Vivion Road overpass on I-35 in Kansas City, Missouri. Witnesses reported that the car simply left the road in a gradual manner, hit many large rocks in the embankment, and eventually struck a

concrete pillar supporting the overpass. During the accident the car spun around several times before hitting the pillar. Witnesses who first arrived at the scene testified that both victims had been thrown from the car. Extensive damage was done to the car. Derek Fox sustained severe head injuries and died in the hospital three days later. Todd Dannenberg also sustained severe injuries, but survived.

Derek's father brought this suit against Dannenberg under the Missouri wrongful death statute, Mo.Rev.Stat. § 537.080 (1986). He claims that Dannenberg was driving the car at the time of the accident and that his negligence caused it. Dannenberg denies that he was driving. No witnesses to the accident had knowledge as to who was driving. At trial, Fox sought to introduce the expert opinions of two engineers who would testify that based on the damage to the car, the position the car was in and the path it took during the accident, and the boys' injuries, it could be determined within a reasonable degree of engineering certainty that Dannenberg was driving the car at the time of the accident. The district court refused to admit Fox's experts' testimony, ruling that they were not competent to state an expert opinion on who was driving because neither one had medical training. However, the district court allowed Dannenberg's expert to testify that it would not be possible to determine who was driving the car based on the available facts in this case.

Two other rulings at trial are important in this appeal. First, the district court refused Fox's request for a jury instruction on res ipsa loquitur. Second, the district court, over Fox's objection, instructed the jury that it may find from the fact that Derek was driving when the boys left Manhattan that he was also driving at the time of the accident.

After the jury rendered its verdict for Dannenberg, Fox filed a motion for a new trial raising the following issues: (1) the court's exclusion of his experts' testimony as to who was driving the car; (2) the court's admission of Dannenberg's expert's testimony that the driver of the car could not be determined; (3) the court's refusal to instruct on res ipsa loquitur; and (4) the court's instruction to the jury regarding the inference that Derek was driving because he was driving when the boys left Manhattan.

The district court denied Fox's motion for a new trial. Fox now appeals, raising the same issues.

## II. DISCUSSION

### A. Expert Testimony

■ Fox first argues that the district court abused its discretion by excluding his experts' testimony that Dannenberg was driving the car at the time of the accident. As an initial matter, we reject Dannenberg's argument that Fox failed to preserve this issue for appellate review in that he failed to put the expert witnesses on the stand to elicit the proffered testimony. Putting a proffered witness on the stand is not the only way to adequately make an offer of proof. It is also sufficient for counsel to "state with specificity what he or she anticipates will be the witness' testimony. . . ." *Strong v. Mercantile Trust Co.*, 816 F.2d 429, 432 n. 4 (8th Cir.1987), *cert. denied*, 484 U.S. 1030, 108 S.Ct. 759, 98 L.Ed.2d 771 (1988). That was accomplished in this case. Thus, we may review this issue.

■ The question of whether expert testimony should be admitted or excluded is a matter governed by federal, rather than state, law. *See Warner v. Transamerica Ins. Co.*, 739 F.2d 1347, 1351 n. 6 (8th Cir.1984); *Scott v. Sears, Roebuck & Co.*, 789 F.2d 1052, 1054 (4th Cir.1986); *Edwards v. Sears, Roebuck & Co.*, 512 F.2d 276, 292 (5th Cir.1975). Federal Rule of Evidence 702 provides the standard for the admissibility of expert testimony in federal court. It states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may

testify thereto in the form of an opinion or otherwise.

Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony. *See* J. Weinstein & M. Berger, Weinstein's Evidence, ¶ 702[02] at 702–30 (1988). The Advisory Notes to the Rule comment that "[t]he rule is broadly phrased. The fields of knowledge which may be drawn upon are not limited merely to the 'scientific' and 'technical' but extend to all 'specialized' knowledge. Similarly, the expert is viewed, not in a narrow sense, but as a person qualified by 'knowledge, skill, experience, training or education.'" Fed.R.Evid. 702, Advisory Note. In *Larabee v. M M & L Intern. Corp.*, 896 F.2d 1112 (8th Cir.1990), we quoted with approval a leading scholar's statement that "'doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility.'" *Id.* at 1116 n. 6 (quoting Weinstein, ¶ 702[02] at 702–30). That point is also implied in our statement in *Hurst v. United States*, 882 F.2d 306 (8th Cir.1989), that "[a] trial court should exclude an expert opinion only if it is so fundamentally unsupported that it cannot help the factfinder." *Id.* at 311 (citation omitted). *See also Loudermill v. Dow Chemical Co.*, 863 F.2d 566, 570 (8th Cir.1988) (stating that "if an expert opinion is so fundamentally unsupported that it can offer no assistance to the jury, then the testimony should not be admitted" (citation omitted)). We believe that these authorities stand for the proposition that Rule 702 was intended to function as a broad rule of admissibility. *See also Mannino v. International Mfg. Co.*, 650 F.2d 846, 849 (6th Cir.1981).

■ It is important also to note that Rule 702 "does not rank academic training over demonstrated practical experience...." *Circle J Dairy, Inc. v. A.O. Smith Harvestore Products, Inc.*, 790 F.2d 694, 700 (8th Cir.1986). That is, an individual can qualify as an expert where he possesses sufficient knowledge gained from practical experience, even though he may lack academic qualifications in the particular field of expertise. *See, e.g., Davis v. United States*, 865 F.2d 164, 168 (8th Cir.1988) (witness with relevant practical experience but no medical training competent to testify as to the probabilities of transmitting gonorrhea); *Loudermill*, 863 F.2d at 569–70 (witness who was not a medical doctor but who had other substantial scientific training held competent to testify as to the cause of plaintiff's cirrhosis of the liver); *Circle J Dairy*, 790 F.2d at 700 (witness who was not a veterinarian and had no advanced degrees qualified to testify as an expert as to damage to cattle because he had significant practical experience with health problems in dairy cattle).

The threshold question of whether a witness is competent as an expert is solely for the trial judge, and, as the text of Rule 702 suggests, the central issue is whether the expert's testimony will assist the trier of fact. The weight of the testimony is for the trier of fact. *See Mannino*, 650 F.2d at 851; Weinstein, ¶ 702[01] at 702–7. The trial court's decision "will not be reversed unless there is a clear abuse of discretion or a clear error of law." *Federal Crop Ins. Corp. v. Hester*, 765 F.2d 723, 728 (8th Cir.1985) (citations omitted). *See also Sweet v. United States*, 687 F.2d 246, 249 (8th Cir.1982).

■ Once the trial court has determined that a witness is competent to testify as an expert, challenges to the expert's skill or knowledge go to the weight to be accorded the expert testimony rather than to its admissibility. *See Davis v. American Jet Leasing, Inc.*, 864 F.2d 612, 615 (8th Cir. 1988); *Davis v. United States*, 865 F.2d at 168. The question of the expert's credibility and the weight to be accorded the expert testimony are ultimately for the trier of fact to determine. *See Robichaud v. Theis*, 858 F.2d 392, 395 (8th Cir.1988); *Singer Co. v. E.I. du Pont de Nemours & Co.*, 579 F.2d 433, 443 (8th Cir.1978).

■ With these guidelines in mind, we turn to the district court's ruling on the expert evidence offered at trial. Fox sought to introduce the testimony of two engineers who would have testified that Todd Dannenberg was driving the car at the time of the accident. The first expert

was Jay Pfeiffer, who is a licensed engineer with a firm that specializes in transportation and accident investigation and analysis. Pfeiffer holds a bachelor's degree in engineering with additional course work toward a graduate degree. He claims to have specialized in investigating and analyzing traffic accidents for approximately nine years; he has investigated over 1,000 accidents. The second expert was Dr. Thomas E. Mullinazzi, who is the Associate Dean of the School of Engineering at the University of Kansas. He has a doctorate in civil engineering and specializes in transportation engineering. He is a member of several professional engineering organizations and has published papers in his field. He claims that he has 12 years of experience in the investigation and analysis of traffic accidents. Both experts would have based their opinion that Dannenberg was driving the car on the following factors: the physical forces operating on the car at the time of the accident, the location of the two boys immediately following the accident, the pattern of the boys' injuries, and the damage to the interior of the car.

The district court did not allow either engineer to testify. The district court reasoned that because one of the factors that Pfeiffer and Mullinazzi would have considered in reaching their opinions was the victims' injury patterns, they were not qualified because neither one had training or education in medical science. *Fox v. Dannenberg*, No. 87–0900, slip op. at 5 (W.D.Mo. June 22, 1989).

We believe that this finding was an abuse of discretion. The engineers' lack of medical training did not render them wholly incompetent to offer expert opinions as to who was driving the car in this case. The question of who was driving is primarily a question of physical science rather than of medical science, and both engineers have significant experience and training in that area. Of course, as the district court recognized, the issue does to some extent involve the science of medicine because one factor that the engineers would consider in forming their opinions is the boys' injury patterns. However, it is probably inaccurate to say that Pfeiffer and Mullinazzi completely lack the knowledge of medicine that would be required to form this opinion. In their combined 20–plus years of experience in accident reconstruction they undoubtedly have acquired some knowledge of the medical aspects of traffic injury patterns. And, we have recognized that witnesses can acquire expertise through practical training even though they lack formal education in a particular area. *See Davis v. United States*, 865 F.2d at 168; *Loudermill*, 863 F.2d at 570.

But, even acknowledging that the engineers' medical qualifications are lacking, and they are, we disagree with the district court that that gap renders them incompetent to form an expert opinion as to who was driving the car. Pfeiffer and Mullinazzi have considerable experience and training in accident reconstruction which, in our opinion, was "sufficient to cross the threshold of admissibility." *Loudermill*, 863 F.2d at 570. The shortcomings in their qualifications are not so serious as to render their opinions "so fundamentally unsupported that [they] cannot help the factfinder." *Hurst*, 882 F.2d at 311 (citation omitted). That their qualifications are not unassailable does not compel us to find them incompetent to give expert testimony. Rather, "it is ... for the jury, with the assistance of vigorous cross-examination, to measure the worth of the opinion[s]." *Singer Co.*, 579 F.2d at 443 (citations omitted).

Moreover, we reject Dannenberg's contention that the district court's exclusion of the expert testimony was harmless. Clearly, Fox has virtually no chance of success in this case if he fails to prove that Dannenberg was driving the car at the time of the accident. And, while expert testimony on that issue may not be absolutely necessary, the district court's exclusion of it substantially undermined his case. This is especially true in light of the district court's subsequent admission of Dannenberg's expert's opinion that there is no way to determine who was driving the car based on the facts and circumstances of the accident.

We hold that the district court abused its discretion in ruling that Fox's experts, Pfeiffer and Mullinazzi, were not competent to offer expert opinions as to which boy was driving the car at the time of the accident. The district court committed reversible error in this regard, and thus we reverse and remand this case for a new trial.

We add a final point on the subject of expert testimony in this case. We consider the district court's admission of Dannenberg's expert's testimony that it is impossible to conclude who was driving the car to be error only in light of the district court's contemporaneous ruling excluding Fox's experts' testimony as to who was driving. On remand, because the district court must admit Fox's experts' testimony pursuant to this opinion, it would not be error for the district court also to admit Dannenberg's expert's testimony on who was driving or on the unfeasibility of reaching a conclusion as to who was driving, assuming, of course, that a proper foundation is laid.

**B. Jury Instruction**

■ Fox next contends that the district court abused its discretion in submitting Instruction 9 to the jury, which read:

> Unless and until outweighed by evidence in the case to the contrary, you may find from the fact that Derek Fox was driving the car at the time Derek Fox and Todd Dannenberg left Manhattan, Kansas, that Derek Fox was driving the car at the time of the accident.

*Fox,* No. 87–0900, slip op. at 7.

The district court has broad discretion in submitting instructions to the jury, and "this court reviews jury instructions to determine whether, taken as a whole, they are confusing or misleading in presenting the principles of law applicable to the case." *Grogan v. Garner,* 806 F.2d 829, 836 (8th Cir.1986) (citation omitted). In diversity cases the substance of jury instructions is a matter governed by the applicable state law. *See Clarkson v. Townsend,* 790 F.2d 676, 677 (8th Cir.1986); C. Wright & A. Miller, *Federal Practice and Procedure,* § 2555 at 651 (1982). Thus, we must look to Missouri law to determine whether this instruction was proper.

■ Dannenberg submits that Instruction 9 is supported by the Missouri Supreme Court's decision in *Martin v. Sloan,* 377 S.W.2d 252 (Mo.1964), the case also relied upon by the district court in this regard. *Martin* was a wrongful death action arising out of a fatal two-car collision. The plaintiff's decedent had been driving alone in one of the cars and the other car had two occupants, but it was unclear which occupant had been driving when the accident occurred. The plaintiff sought to prove that the defendant's decedent, Sloan, had been driving the other car and relied on the fact that Sloan had last been seen driving the car some 2.6 miles from the scene of the accident shortly before the accident. The plaintiff invoked the principle that "proof of the existence at a particular time of a fact of a continuous nature gives rise to an inference or rebuttable presumption that the fact exists at a subsequent time." *Id.* at 256. The Missouri court approved that principle and held that under the circumstances the fact that Sloan had last been seen driving the car 2.6 miles away from the accident site just prior to the accident permitted the inference that he was driving when the collision happened. *Id.* at 257.

We do not agree, however, that the holding in *Martin* supports the submission of Instruction No. 9 in this case. The facts involved in the instant case—evidence that Fox was driving the car some four hours prior to the accident over 100 miles away from the accident site—are a far cry from the 2.6 miles and few minutes involved in *Martin.* The court in *Martin* emphasized that the principle it relied on was very dependent upon the circumstances to which it was applied, and that as the time and distance between the two events increased, the strength of the inference diminished. *Id.* The court placed great importance on the fact that the time and distance between when Sloan was seen driving the car and when the accident happened were very short. *Id.*

The facts in this case differ substantially. Not only are the time and distance involved in this case far greater than in *Martin*, in this case there was also some other evidence suggesting that a change in drivers might have taken place.[1] The court in *Martin*, in concluding that the inference that Sloan was driving was permissible, considered it significant that there were no other circumstances that detracted from the conclusion that Sloan was driving. *Id.* Applying the same reasoning, it is significant in this case that there was some evidence that the boys changed drivers. That evidence made the court's instruction on the inference that Derek Fox was driving even more inappropriate.

Accordingly, we believe that the district court abused its discretion in instructing the jury that it could infer from the fact that Derek was driving when the boys left Manhattan that he was also driving when the accident happened. The principle announced in *Martin* does not support the instruction in this case. That principle depends to a great extent on the particular circumstances in a given case, and is appropriate only where the events at issue have a quality of permanence to them that makes the inference reasonable. *See id.* at 256–57; *State v. Donahue*, 585 S.W.2d 160, 162 (Mo.App.1979); J. Wigmore, *Wigmore on Evidence*, Vol. II § 437 at 512–13 (1979). We do not think that this is such a case. Further, we agree with Fox that this

instruction unfairly prejudiced his case, and that its submission was thus reversible error.[2]

C. Res Ipsa Loquitur

■ We next address Fox's argument that the district court erred in refusing to instruct the jury on the doctrine of res ipsa loquitur. Under Missouri law, res ipsa loquitur is a rule of evidence which "permits a jury to infer negligence without proof of specific negligence." *Marshall Interiors, Inc. v. Young Men's Christian Ass'n. of Greater St. Louis*, 787 S.W.2d 329, 331 (Mo.App.1990). Res ipsa loquitur only applies when "(a) the occurrence resulting in injury was such as does not ordinarily happen if those in charge use due care; (b) the instrumentalities involved were under the management and control of the defendant; (c) and the defendant possesses superior knowledge or means of information as to the cause of the occurrence." *Willis v. Terminal Railroad Ass'n. of St. Louis*, 421 S.W.2d 220, 223 (Mo.1967) (quoting *Layton v. Palmer*, 309 S.W.2d 561, 564 (Mo.1958)). A plaintiff invoking the doctrine of res ipsa loquitur "is not required to present evidence overthrowing every reasonable theory of non-liability on the part of the defendant. The attendant facts must raise a reasonable inference of defendant's negligence but they need not also exclude every other inference." *Cremeens*

1. Fox introduced evidence that Todd Dannenberg was wearing different clothes at the accident scene from what he was wearing when the boys left the dormitory in Manhattan, indicating that the boys stopped at some point and suggesting that the stop provided an opportunity to switch drivers. There was also evidence, and in fact it appears to be undisputed, that the boys stopped to eat before leaving Manhattan. And, Fox suggests that the fact that Derek Fox did all the driving and got no sleep on the trip to Manhattan is some evidence that Dannenberg, who had slept, helped drive on the return trip the next day. Finally, there was testimony that on a previous trip several weeks before the accident Dannenberg had driven Derek Fox's car on the return trip.

We make no comment on the persuasiveness of this evidence. We mean only to point out that there was some evidence that was contrary to the conclusion that Derek Fox did all the driving.

2. We also note that the language used in framing the inference was not altogether accurate. The only undisputed fact relative to the inference was that Derek was driving when the boys pulled away from the dormitory where they visited Derek's girlfriend. Derek's girlfriend so testified. Transcript, Vol. I at 152, and Fox appears to agree. Appellant's Brief at 2. In Instruction No. 9, however, the district court treated as undisputed the fact that "Derek Fox was driving the car at the time [the boys] *left Manhattan.*" *Fox*, slip op. at 7 (emphasis added). It does not appear that that fact was undisputed, as the district court's instruction implied. Fox appears to admit only that Derek was driving when the boys left his girlfriend's dormitory. It seems to us an important point in light of the fact that Fox's theory in this case is that the boys changed drivers after they left the Kansas State campus, and he seems to suggest that the change may have occurred when the boys stopped to eat before leaving Manhattan.

*v. Kree Institute of Electrolysis*, 689 S.W.2d 839, 842 (Mo.App.1985) (citations omitted). Res ipsa loquitur serves only to make the plaintiff's prima facie case of the defendant's negligence. That is, "[i]t *allows* the jury to draw an inference of negligence from the circumstances, but it does not *require* such an inference as a matter of law." *Lair v. Lancourt*, 734 S.W.2d 247, 249 (Mo.App.1987) (citation omitted). Thus, in a case to which res ipsa loquitur applies, the defendant is of course permitted to present relevant evidence rebutting the plaintiff's prima facie case.

Fox argues that under Missouri law res ipsa loquitur applies in one-car accident cases, and cites us to *Fellows v. Farmer*, 379 S.W.2d 842 (Mo.App.1964). *Fellows* was a wrongful death case arising out of a one-car accident in which the defendant conceded that "the accident under consideration was one which ordinarily would not have happened if the driver had been exercising due care...." *Id.* at 845–46 (footnote omitted). The court in *Fellows* approved of that concession and cited a line of Missouri cases involving one-car accidents in which res ipsa loquitur was applied. *Id.* at 846 n. 2. *See, e.g., Lindsey v. Williams*, 260 S.W.2d 472, 474–75 (Mo. 1953) (car swerved off road and hit a tree head-on; res ipsa held applicable), *cert. denied*, 347 U.S. 904, 74 S.Ct. 428, 98 L.Ed. 1063 (1954); *Dodson v. Maddox*, 359 Mo. 742, 748, 223 S.W.2d 434, 438 (1949) (tractor-trailer went off the road and collided with embankment; res ipsa held applicable); *Tabler v. Perry*, 337 Mo. 154, 165–66, 85 S.W.2d 471, 476–77 (1935) (car went off road and hit embankment; res ipsa applied).

Further, our research indicates that more recent Missouri cases have also applied res ipsa loquitur in one-car accident cases. *See Fields v. Berry*, 549 S.W.2d 122, 124 (Mo. App.1977) (referring to the "general rule that loss of control or failure to control the movement of an automobile so that it leaves the highway, strikes a fixed object and causes injury permits an inference of negligence on the part of the driver") (citations omitted); *Silver v. Curtis*, 490 S.W.2d 412, 414 (Mo.App.1973) (same). Based on this case law, we must disagree with the district court and hold that under Missouri law this is a case in which the first requirement of res ipsa loquitur was met in that the accident involved here is one which ordinarily does not occur when those in control exercise due care.

Of course, before a res ipsa loquitur instruction is warranted in this case, Fox must fulfill the second requirement of the doctrine by showing that at the time of the accident the car was under Dannenberg's control. We want to emphasize that our holding that the facts of this case permit the inference of negligence does not relieve Fox of the burden of proving that Dannenberg was driving the car at the time of the accident. Rather, if the identity of the driver is proven by a preponderance of the evidence, res ipsa loquitur provides an inference that the accident was caused by his negligence.

Finally, it is clear that the third requirement of res ipsa loquitur is met in that Dannenberg's knowledge of the cause of this accident, although possibly minimal under the circumstances, is certainly superior to Fox's knowledge.

■ Accordingly, we hold that on remand the jury should be instructed that if it finds that Dannenberg was driving the car at the time of the accident, it may, pursuant to the doctrine of res ipsa loquitur, infer that the accident was caused by his negligence. If on remand the district court determines that Fox's evidence that Dannenberg was driving is insufficient as a matter of law, then, of course, an instruction on res ipsa loquitur would not be warranted. For that matter, if the district court finds Fox's evidence on that point to be legally insufficient, the case would not be submissible to the jury under any set of instructions.

## III. CONCLUSION

In sum, we hold that the district court abused its discretion: (1) by excluding the expert testimony of Fox's experts on the issue of the identity of the driver; (2) by instructing the jury that it may infer from

the fact that Derek Fox was driving when the boys left Manhattan that he was also driving when the accident happened; and (3) assuming that the evidence that Dannenberg was driving was not insufficient as a matter of law, by failing to give an instruction on the doctrine of res ipsa loquitur. Consequently, we reverse and remand this case to the district court for further proceedings consistent with this opinion.