**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

DAVID M. PROCTOR,
Plaintiff-Appellee,

v.                                                                                      No. 97-2330

BILL C. TSAO,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Greenville.
Terrence W. Boyle, Chief District Judge.
(CA-96-86-4-BO)

Argued: June 4, 1998

Decided: September 24, 1998

Before WILKINSON, Chief Judge, MURNAGHAN, Circuit Judge,
and SMITH, United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Tyrus Vance Dahl, Jr., WOMBLE, CARLYLE, SAN-
DRIDGE & RICE, P.L.L.C., Winston-Salem, North Carolina, for
Appellant. Stevenson Lee Weeks, Sr., WHEATLY, WHEATLY,
NOBLES & WEEKS, P.A., Beaufort, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Bill C. Tsao (Tsao) appeals two of the court's rulings concerning the admissibility of expert testimony. Tsao also appeals the judgment entered below, including the court's award of prejudgment interest on damages. We affirm the district court in all respects.

I.

On July 11, 1993, plaintiff and defendant, together with defendant's brother, met at a marina in Morehead City, North Carolina, to begin a day of boating and fishing. The three planned to rendezvous with a group of friends in coastal waters, then proceed to Northwest Places, a fishing hole in the Atlantic Ocean off the coast of North Carolina. At the marina, plaintiff, defendant, and defendant's brother boarded defendant's boat, a 25-foot Pursuit motorboat with twin engines.

Defendant drove the boat out of the Morehead City area and into coastal waters, at which point they met their friends, who rode in a separate boat. Both boats traveled to Cape Lookout Light, where the group swam and ate lunch. The parties in the companion boat decided not to fish because of the rough sea conditions. Defendant, however, was determined to fish that day at Northwest Places. After lunch, defendant drove the boat, still containing defendant's brother and plaintiff, and headed offshore toward the fishing grounds.

Defendant followed a southwest course out of Cape Lookout. The wind was steady out of the southwest, gusting between ten and fourteen miles per hour. The seas were rolling and choppy. The waves averaged between one and three feet in height, with occasional swells of three to five feet. Defendant, impatient because it was now after lunch and they had not yet reached their fishing destination, drove the

2

boat at consistent speeds of twenty to thirty miles per hour during the course of the trip.

Throughout the drive, defendant was seated facing the wheel, steering the boat. Because defendant had to maintain a low position to sit and steer the boat, his vision of oncoming waves was partially obstructed. The windshield was somewhat smeared with spray, further obstructing defendant's vision. During the trip, defendant's brother was seated next to him in the boat. Plaintiff was positioned behind defendant, holding on to a leaning post.

Defendant's brother was concerned about the roughness of the ride. Both plaintiff and defendant's brother had to hold on to grips to avoid being thrown from their seats. Nonetheless, defendant never slowed the vessel to accommodate the rough seas. Defendant claimed it was necessary to drive the boat between twenty and twenty-five miles per hour in order to plane the vessel, but evidence introduced at trial suggested that the vessel could have been planed at a lower speed, with less risk involved.

During the ride, the pounding of the waves against the boat caused a cabinet containing fishing gear to come open, despite a latch and lock on it. Plaintiff obtained the key to the cabinet, locked it, and returned to his seat behind defendant. When the cabinet flew open a second time, plaintiff left his seat and again locked the cabinet door. Upon returning to his seat, plaintiff held onto the grab rail while trying to seat himself. At that moment, the boat struck a large wave, approximately five feet in height. The impact caused the boat to become airborne, then slam down into the sea. Plaintiff was thrown approximately twelve to eighteen inches in the air. When his hand came loose from the post, plaintiff was turned and fell backward onto the deck. Plaintiff landed on his ankle, as a result of which he suffered a fracture dislocation of the ankle, and a fracture of the proximal fibula several inches below his knee. Plaintiff was taken to a nearby hospital. The orthopedic surgeon who examined plaintiff determined that the injuries were caused by a high-impact accident and were not consistent with a "slip and fall" accident.

Several days later, plaintiff visited a second orthopedic surgeon. The orthopedic surgeon determined that plaintiff's fracture had

slipped out of alignment and required resetting. The surgeon performed a resetting procedure and placed plaintiff in a full-leg cast for eight weeks. Upon removal of the cast, plaintiff underwent physical therapy to rehabilitate the injured ankle and fibula.

Despite these efforts, plaintiff continues to suffer swelling and chronic pain. He has suffered a fifteen percent permanent loss of mobility in his ankle. According to the orthopedic surgeon who reset plaintiff's ankle, based on the development of degenerative osteoarthritis, plaintiff will likely require an ankle fusion at some point in the future. Moreover, plaintiff has been unable to return to his position as a poultry inspector with the North Carolina Department of Agriculture, because the job entails long periods of standing and other duties plaintiff can no longer perform as a result of his injuries.

Plaintiff filed the complaint in the instant suit on June 13, 1996. A bench trial was conducted on August 26 and 27, 1997. The court heard testimony from the parties, expert witnesses, and lay witnesses. The court issued its written Judgment and Order on September 18, 1997. The court found that defendant was negligent in his operation of the vessel, causing the injuries to plaintiff's ankle and fibula. The court found that plaintiff was not contributorily negligent and awarded damages in the amount of $265,000 for medical expenses, pain and suffering, permanent disability, and loss of income. On September 19, 1997, defendant filed a notice of appeal from the written Judgment and Order.

On September 23, 1997, plaintiff filed a motion to amend judgment. Defendant submitted a memorandum in opposition to the motion to amend judgment on September 30, 1997. The trial court granted plaintiff's motion to amend judgment in a written order filed November 20, 1997. The order amended judgment to include prejudgment interest on the entire award of $265,000, at a rate of eight percent. Defendant amended his notice of appeal on December 4, 1997, to include his appeal from the order issued November 20, 1997.

II.

Defendant first challenges two of the district court's evidentiary rulings concerning admissibility of expert testimony. A trial court has

4

broad discretion in determining whether to admit expert testimony and should not be reversed absent a clear abuse of discretion. Thomas J. Kline, Inc. v. Lorillard, Inc., 878 F.2d 791, 799 (4th Cir. 1989), cert. denied, 493 U.S. 1073 (1990). In applying the abuse of discretion standard, the appellate court may not categorically distinguish between rulings that allow expert testimony and rulings that disallow it. General Elec. Co. v. Joiner, ___ U.S. ___, 118 S. Ct. 512, 517 (1997).

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert opinion testimony. Under Rule 702,

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise.

Fed. R. Civ. P. 702. The touchstone of admissibility is whether the testimony will assist the trier of fact. Fox v. Dannenberg, 906 F.2d 1253, 1256 (8th Cir. 1990). The admissibility inquiry is no different when the court sits without a jury. As this court noted in Friendship Heights Assoc. v. Koubek, 785 F.2d 1154 (4th Cir. 1986),

> Rule 702 speaks in terms of assisting the trier of fact. It makes no distinction in its application depending on whether the trier of fact is a judge or a jury. Although a district judge who is functioning as the trier of fact is not bound to accept the testimony of an expert witness, he may not abuse his discretion in refusing to hear such testimony.

Id. at 1163.

The first evidentiary ruling that appellant challenges concerns the testimony of plaintiff's expert witness, Donald Wayne Davis (Davis). At trial, defendant objected to certain portions of Davis's testimony. Defendant objected on the grounds that Davis did not disclose, in his Rule 26 reports, three aspects of his testimony: the fact that he had performed an independent analysis of sea conditions; the fact that he

5

had conducted an underway inspection of defendant's boat; and the fact that he had relied on at least one treatise in forming his opinions. Defendant argues that the trial court should have excluded the portions of Davis's testimony to which he objected.

Under Rule 26 of the Federal Rules of Civil Procedure, a party must disclose to the other side all experts who may testify at trial. See Fed. R. Civ. P. 26. The disclosure must be accompanied by a written report prepared and signed by the expert witness. The report must contain "a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions[; and] any exhibits to be used as a summary of or support for the opinions." Fed. R. Civ. P. 26(a)(2)(B). Rule 26(e) also requires supplementation of disclosures, including the reports of an expert, if such disclosures are materially incomplete or incorrect. Fed. R. Civ. P. 26(e)(1).

Rule 37 of the Federal Rules of Civil Procedure provides, "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) shall not, unless such failure is harmless, be permitted to use as evidence at a trial. . . any witness or information not so disclosed." Fed. R. Civ. P. 37(c).

If a party fails to comply with Rule 26, it is within the trial court's discretion to impose sanctions, including the exclusion of evidence. See, e.g., Walsh v. McCain Foods, Ltd. , 81 F.3d 722, 727 (7th Cir. 1996). On the record before us, we cannot say that the trial court abused its discretion in refusing to exclude portions of Davis's testimony. The record reflects that defendant had sufficient notice of the nature of Davis's testimony; Davis's initial and supplemental Rule 26 reports adequately informed defendant as to the nature and bases of his testimony. Moreover, any failure on the part of plaintiff's expert to comply with Rule 26 was harmless error, for the reasons stated below.

Davis's Rule 26 reports properly disclosed that Davis based his opinions on the parties' depositions and the same weather data used by one of defendant's expert witnesses. Davis's opinion regarding wave heights on the day of the incident was identical to the description provided by defendant in his deposition and at trial. Likewise,

6

any failure to disclose the name of the treatise on which Davis relied was harmless error; defendant's own expert failed to disclose in his Rule 26 report the name of the treatise on which he relied. We find the court did not abuse its discretion, because any failure to comply with Rule 26's requirements did not unfairly surprise defendant to his prejudice, and was harmless error.

The second evidentiary ruling to which defendant objects is the district court's exclusion of certain testimony by defendant's expert, Charles Game (Game). Defendant offered Game as an expert in marine engineering, and boat handling and safety. After conducting a full voir dire, the court determined that Game was qualified as an expert in marine engineering, but not in boat handling or safety. Consequently, the court did not permit Game to testify as to whether an operator would have been negligent in operating defendant's boat at 3,000 rpm, under the sea conditions described by the trial witnesses. J.A. at 332. However, the court permitted Game to testify as to the boat's capacity to tolerate 3,000 rpm, under the sea conditions described by the trial witnesses. J.A. at 334.

Defendant argues that the court improperly refused to qualify Game as an expert in boat handling and safety. In support of his argument, defendant points to Game's past appointments to various boating and yachting committees and boards. Defendant also contends that the question of whether an operator would be negligent in operating defendant's vessel at 3,000 rpm, under the conditions described by the trial witnesses, involves marine engineering, not boat handling or safety. Thus, defendant argues that the court should have permitted Game to respond to this question at trial.

We find that the court did not abuse its discretion in ruling that Game was not qualified as an expert in boat handling or safety. According to his own testimony at trial, Game is a marine consulting engineer, whose work has primarily involved electrical engineering. He has no education, training, or experience in boat handling and safety. He has never testified or been qualified as an expert in boat handling.

Nor did the court abuse its discretion in excluding Game's testimony on the question of negligence. It was not an abuse of discretion

7

to rule that the question of whether it is proper to operate a vessel at a certain speed under certain conditions is a matter of boat handling, not marine engineering. The court permitted Game to testify as to the boat's capabilities under certain sea conditions, an issue which more clearly involves marine engineering, Game's area of expertise. Finding no abuse of discretion, we affirm the ruling of the court below.

III.

Defendant challenges the judgment entered below as against the greater weight of the evidence. We review the judgment in an admiralty case under the same standard applied in non-admiralty civil cases. McAllister v. United States, 348 U.S. 19, 20 (1954). In reviewing the judgment of a trial court, sitting without a jury in admiralty, the appellate court may not set aside the judgment unless it is clearly erroneous. Norfolk Shipbuilding & Drydock Corp. v. M/Y La Belle Simone, 537 F.2d 1201, 1202 (4th Cir. 1976). A finding is clearly erroneous where, although there is some evidence in the record to support the finding, the reviewing court on the entire record "is left with a definite and firm conviction that a mistake has been made." Ente Nazionale Per L'Engeria Electricca v. Baliwag Nav., Inc., 774 F.2d 648, 654 (4th Cir. 1985). In determining whether a district court's findings in an admiralty case are clearly erroneous, the appellate court must consider the evidence in the light most favorable to the appellee. Id. at 653.

Questions of negligence in an admiralty case are treated as factual issues, and are thus subject to the clearly erroneous standard of review on appeal. Id. at 654. Likewise, the apportionment of fault by the trier of fact, and its damages award, are reviewed for clear error. United States Fire Ins. Co. v. Allied Towing Corp., 966 F.2d 820, 824 (4th Cir. 1992). Guided by these principles, we find that the judgment entered below is not clearly erroneous. The court's factual findings with regard to duty, breach of duty, causation, and damages are supported by the record as a whole. Moreover, the trial court based its findings upon assessments of witness credibility, which is deserving of the highest degree of appellate deference. Id. at 823.

The court's finding that defendant breached his duty of reasonable care to his passengers, by failing to maintain a proper lookout and

8

warn of dangers, and by operating his vessel in an unsafe manner, is amply supported by the record: defendant maintained excessive speeds despite his obstructed view and the rough sea conditions, as evidenced by the fact that the boat was airborne, the passengers had difficulty remaining seated throughout the trip, and the cabinet door repeatedly came open, despite a latch and lock.

With regard to causation, the court's finding that defendant's negligence factually and proximately caused plaintiff's injuries is not clearly erroneous. The orthopedic surgeon who examined plaintiff immediately following the incident determined that the injuries were caused by a high-impact accident and were not consistent with "a slip and fall" accident. Likewise, the court's finding that plaintiff was not contributorily negligent is not clearly erroneous; plaintiff was moving about the vessel and facing aft just prior to his fall, but defendant's duty of reasonable care to his passengers extended precisely to this type of activity. Plaintiff was moving about to secure the boat's cabinet door, which had opened as a result of the trip conditions. Moreover, no evidence indicated that defendant, the boat driver, instructed plaintiff, a boat passenger, to remain in one place while the vessel was in motion and not to secure the cabinet.

Nor can we find clear error in the factual findings underlying the court's damages award of $265,000. Each item of damages awarded is supported by evidence introduced at trial. After carefully reviewing the record, we are not left with a definite and firm conviction that an error has been committed. Accordingly, we affirm the judgment of the district court.

IV.

Finally, defendant challenges the district court's order of November 20, 1997, amending judgment to include prejudgment interest at a rate of eight percent. It is within the court's discretion to award prejudgment interest in maritime claims for personal injury or death. Ameejee Valleejee & Sons v. M/V Victoria U., 661 F.2d 310, 313 (4th Cir. 1981). We review a district court's discretionary allowance of prejudgment interest for clear error. In an admiralty case, prejudgment interest is "the rule rather than the exception." United States Fire Insur. Co. v. Allied Towing Corp., 966 F.2d 820, 828 (4th Cir.

9

1992). The court may award prejudgment interest at the maximum allowable rate under the applicable state statutes. Ameejee Valleejee, 661 F.2d at 313.

We find that the district court's award of prejudgment interest is supported by the record, and is not clearly erroneous. The instant case presented no "peculiar circumstances" that would render such an award inequitable, particularly since the court reduced future damages to their present value. See Allied, 966 F.2d at 827; Gardner, 333 F.2d at 677. Finding no clear error, we affirm the court's award of prejudgment interest on damages.

V.

Having carefully reviewed the record as a whole, we find no abuse of discretion in the court's two rulings concerning admissibility of expert testimony. Nor do we find clear error in the judgment entered below. Finally, the district court's award of prejudgment interest on damages is supported by the record, and is not clearly erroneous. For the foregoing reasons, the judgment of the district court is affirmed in all respects.

AFFIRMED