# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2429

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the Western |
| v. | * | District of Missouri. |
| | * | |
| Ricky Carter, | * | [UNPUBLISHED] |
| | * | |
| Appellant. | * | |

_____

Submitted:  November 16, 1999

Filed:  November 23, 1999

_____

Before McMILLIAN, FAGG, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

PER CURIAM.

Following a bench trial, a district court convicted Ricky Carter of growing marijuana with intent to distribute it in violation of 21 U.S.C. § 841(a)(1) and of maintaining a place for the purpose of growing marijuana in violation of 21 U.S.C. § 856(a)(1).  Carter appeals, challenging the sufficiency of the evidence and the admission of testimony about the effect of broad leaf herbicide on marijuana.  We affirm.

Carter's father rented three adjoining fields for farming. The smallest field was surrounded by timber and could not be seen from adjacent roads. Carter lived alone in a house owned by his family next to the rented land. In the spring of 1998, Carter's father hired a neighbor to plant a corn crop in the fields. Carter's father also hired a company to apply fertilizer and a broad leaf herbicide. The company had employed Carter for several years. Carter applied the broad leaf herbicide with a spray truck, and a coworker applied granular treatments with a different truck. Carter's coworker saw Carter enter the small field with the truck and heard him spraying, but could not see him. Carter had enough spray to cover all three fields and used all of it.

Carter's father generally went to the rented land every day, but did not visually inspect the small field surrounded by timber. He checked the entire crop's progress by looking at the visible adjoining fields. Carter would occasionally help his father tend the crop. In August 1998, drug agents flying over the farmland in a helicopter spied marijuana growing in the small field. On closer inspection, they found over 3000 tended female marijuana plants from six to eight feet tall in the midst of the small cornfield. The plants had been recently fertilized and started from seeds in the field rather than transplanted. They had been growing about two months, and were worth over $3 million. Although the adjoining fields had a healthy corn crop and were weed-free, the small field was full of weeds and the corn was not as tall. The corn was pushed down in several areas to provide the marijuana plants with more space and sunlight. None of the neighbors had seen anyone entering the field or any unusual activity on the roads next to the field.

When officers questioned Carter about the marijuana, he denied any knowledge of it, but suggested the officers speak with a man who had come by in a blue Tempo two months earlier and asked permission to walk on the land to scout places for deer stands. The blue Tempo was parked on Carter's property, and when officers inspected it, they found a bill of sale showing it had been purchased just three weeks before then. A search of Carter's home and property revealed no evidence of drug activity.

Carter contends this evidence is insufficient to convict him. We must decide whether, viewing the evidence in the light most favorable to the guilty verdict, a reasonable factfinder could find beyond reasonable doubt Carter grew the marijuana and maintained a place for growing the marijuana. See United States v. Howell, 31 F.3d 740, 741 (8th Cir. 1994) (per curiam). The critical issue is whether the evidence showed Carter had constructive possession and control of the marijuana growing in the small cornfield leased by his father. See id. There was no direct evidence against Carter in this case, so we must consider the permissible inferences that may be drawn from the circumstantial evidence.

At trial, a government marijuana cultivation specialist testified, among other things, that broadleaf herbicide kills marijuana. Carter asserts this testimony was beyond the scope of the specialist's expertise. We conclude the district court did not abuse its discretion in permitting the testimony, which was based on the specialist's experience and training. See Fox v. Dannenberg, 906 F.2d 1253, 1256 (8th Cir. 1990) (standard of review); Fed. R. Evid. 702. Given the testimony, and other testimony about the weedy condition of the small field in comparison to the other two weed-free fields, the district court could infer Carter purposefully did not spray the small field to promote marijuana growth. Carter was also familiar with the field's isolation, and had access to the field across his family's property. He knew his father leased the field and probably would not check the field. Carter also attempted to divert attention to a mysterious stranger with a dubious explanation. The Government's case was not particularly strong, but we cannot say it was insufficient as a matter of law. See Howell, 31 F.3d at 741 (conviction under §§ 841(a)(1) and 856(a)(1) supported by evidence that defendant avoided marijuana plants when applying herbicide, evidence the plants had been started indoors, and indoor grow equipment found in defendant's attic).

We thus affirm Carter's conviction.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.